O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MARGARET PHELAN ARCHULETA,       )   NO. CV 12-04486-MAN
                                 )
                  Plaintiff,     )
                                 )   MEMORANDUM OPINION
            v.                   )   AND ORDER
                                 )
CAROLYN W. COLVIN,[1]            )
Acting Commissioner of Social    )
Security,                        )
                                 )
                  Defendant.     )
_____ )

Plaintiff filed a Complaint on May 31, 2012, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for supplemental security income ("SSI"). On July 5, 2012, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on February 28, 2013, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.

---

[1]   Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action. (*See* Fed. R. Civ. P. 25(d).)

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for SSI benefits on May 26, 2009. (Administrative Record ("A.R.") 135-41.) Plaintiff alleges a disability onset date of March 1, 2007, and claims she cannot work because of:  depression; "rods, pins, . . . dislocation, [and] ligaments o[f the] left leg"; extreme mood swings; anxiety attacks; and flat feet.  (A.R. 156.)  Plaintiff has past relevant work experience as a food server, bartender, motel clerk, receptionist, and cashier.  (A.R. 31, 78-80, 163-78.)

After the Commissioner denied plaintiff's claim (A.R. 91-95), plaintiff requested a hearing (A.R. 96).  On July 28, 2010, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Elizabeth R. Lishner (the "ALJ").  (A.R. 53-89.) Vocational expert Elizabeth Brown-Ramos and medical expert Glenn Griffin also testified.  (*Id.*) On August 11, 2010, the ALJ denied plaintiff's claim, and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision.  (A.R. 6-8.)  That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since the application date of May 26, 2009.  (A.R. 25.)  The ALJ also found that plaintiff has the following severe impairments:  status post left ankle fracture; lumbar discogenic disorder; remote history of myocardial infarction; depressive disorder, not otherwise specified; anxiety disorder, not otherwise specified; and a history of alcohol abuse.  (*Id.*)  The ALJ then found that plaintiff does not have an impairment or combination of impairments that meet or medically equal a listed impairment in 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.  In so finding, the ALJ discussed the medical evidence and concluded that no treating or examining physician or psychiatrist reported findings that would satisfy the severity requirements of any listed impairment.  (A.R. 25-

26.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to:

> lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of 4 hours in an 8-hour workday, and sit for a total of 6 hours in an 8-hour workday, with the following additional limitations:  no kneeling, crouching, or crawling; no more than occasional climbing or balancing; no exposure to unprotected heights or dangerous machinery; no concentrated exposure to cold; no more than simple, routine tasks on a constant basis; no more than complex tasks on a frequent basis; and no more than frequent interaction with supervisors, co-workers, or the public.

(A.R. 26.)  The ALJ noted several records from Dr. Jay Lin, plaintiff's treating physician, including treating notes, confirming her left ankle fracture with hardware placement and increased left ankle pain resulting from standing too long (A.R. 27), and a January 2010 letter, indicating that plaintiff had progressively increasing lower back pain with radiation to the right leg (A.R. 28).  The ALJ also referenced a January 2009 letter written by Dr. Lin, noting that plaintiff is unable to walk long distances or stand for extended periods of time.  (A.R. 30.)  The ALJ noted that plaintiff failed to report complaints or other issues related to back pain during visits to Dr. Lin from 2008 to 2009 and that he prescribed no increase in dosage or new medication to treat plaintiff's symptoms. (A.R. 29.)

The ALJ also considered the findings of:  Dr. James M. Paule, a consulting doctor; Dr. Christopher Ho, a State Agency psychiatrist; Dr. Patrick Mauer, plaintiff's treating physician from 1998 to 2007; Dr. J. Lightfoot, a State Agency medical consultant; and Dr. Glenn E. Griffin, the medical expert who testified at the administrative hearing.  After reviewing the record, the ALJ specifically found that Dr. Lin's opinions had relatively little probative value because:

In a letter dated January 6, 2009, Dr. Lin indicated [plaintiff] is "not able to walk a long distance or stand for long hours [sic]" due to her history of left ankle dislocation and pinning.  In a more recent letter dated January 20, 2010, Dr. Lin indicated [plaintiff] "has not been able to walk distance even sitting more than 15 minutes [sic]" because of back pain.  Although Dr. Lin does have a treating relationship with [plaintiff], as noted above the actual treatment visits have been relatively infrequent.  Moreover, Dr. Lin's own reports contain virtually none of the sort of laboratory and/or clinical findings one would reasonably expect to see if [plaintiff] were in fact as limited as assessed; yet, Dr. Lin has not addressed this weakness.  To the extent Dr. Lin's more recent opinion rest[s] primarily on his assessment of [plaintiff]'s back pain, it is not deserving of significant weight because it is unsupported by any medical signs, findings, or explanation; and it is at odds with the essentially normal clinical findings and other medical evidence of record.

(A.R. 30; internal citations omitted.)

In determining plaintiff's RFC, the ALJ also discounted plaintiff's pain testimony and credibility for several reasons.  First, the ALJ found that clinical findings relating to plaintiff's physical and mental health, such as normal motor strength, a normal range of motion, and normal thought content, among others, did not support more restrictive or mental restrictions. (A.R. 28.) Second, the ALJ explained that plaintiff's treatment and her use of medications undermined her credibility, because she made infrequent visits to the doctor, despite her allegedly debilitating symptoms, and had received conservative treatment for her pain and anxiety.  (A.R. 29.)  Third, the ALJ reasoned that plaintiff's work history undermined her credibility, because she worked only sporadically prior to the alleged onset date and even worked as a bartender for five months after the onset date.  (*Id.*)  Further, she failed to report such work activity despite requests from the agency for such information.  (*Id.*)  Fourth, the ALJ cited plaintiff's daily activities, finding that they were not as limited as one would expect given her complaints of disabling symptoms and

4

limitations.  (*Id.*)  The ALJ noted that plaintiff engaged in the following significant daily activities: walking; riding a bicycle for exercise; performing self-care activities; preparing meals; going shopping; and spending time with others three to four times a week. (A.R. 30.)  These activities were confirmed by a third party, the girlfriend of plaintiff's brother. (*Id.*)  Finally, the ALJ reasoned that objective medical evidence, including the opinions of Drs. Paule, Lightfoot, and Griffin, did not support plaintiff's complaints.  (*Id.*)

The ALJ determined that, given the ALJ's RFC determination, plaintiff was unable to perform her past relevant work as a food server, bartender, motel clerk, receptionist, and cashier, but considering her age,[2] education,[3] work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform.  (A.R. 31.)  Accordingly, the ALJ concluded that plaintiff has not been under a disability since May 26, 2009, the date the application was filed.  (A.R. 32.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice.  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

---

[2]     On the application date, plaintiff was 45 years old, which is defined as a younger individual. (A.R. 31; *citing* 20 C.F.R. § 416.963.)

[3]     The ALJ found that plaintiff has at least a high school education and is able to communicate in English.  (A.R. 31; *citing* 20 C.F.R. § 416.964.)

5

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ committed legal error by giving Dr. Lin's findings little probative value.  (Joint Stipulation ("Joint Stip.") at 4-11, 17-19.)  Plaintiff also claims that the ALJ improperly discounted plaintiff's pain testimony and credibility.  (Id. at 19-23, 27-29.)

**I.    The ALJ Properly Considered The Medical Opinions Of Record, Including The Treating Physician Opinions Of Jay Lin, M.D.**

An ALJ is obligated to take into account all medical opinions of record.   20 C.F.R.

6

§416.927(d).  It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also 20 C.F.R. § 416.927(d).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to know and observe the claimant. Magallanes, 881 F.2d at 751.  When a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  When contradicted by another doctor, a treating or examining physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. Id.; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Orn, 495 F.3d at 632.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." Lester, 81 F.3d at 831; see Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)(finding that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence).  However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." Andrews, 53 F.3d at 1041. Independent clinical findings include "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Orn, 495 F.3d at 632 (internal citations omitted).

In assessing plaintiff's allegedly disabling physical and mental impairments, the ALJ carefully reviewed and weighed the opinions of a number of medical sources in accordance with the proper legal standards.  While it is true, as noted *supra*, that the opinion of a treating physician is generally entitled to the greatest weight, the ALJ gave little probative weight to the opinion of plaintiff's treating physician, Dr. Lin, because:  (1) of the relative infrequency of plaintiff's visits to him; (2) "Dr. Lin's own reports contain virtually none of the sort of laboratory and/or clinical findings one would reasonably expect to see if [plaintiff] were in fact as limited as assessed"; and (3) Dr. Lin's more recent opinion regarding plaintiff's back pain "is unsupported by any medical signs, findings or explanation . . . and it is at odds with the essentially normal clinical findings and other medical evidence of record."  (A.R. 30.)  Instead, the ALJ gave great weight to the opinion of examining physician Dr. Ho (a psychiatrist) in assessing plaintiff's mental impairments and limitations and great weight to the opinions of examining physician Dr. Paule (an internist) and non-examining, State Agency physician Dr. Lightfoot (a general surgeon) in assessing plaintiff's physical impairments and limitations.  The ALJ's decision to afford great weight to these opinions is supported by substantial evidence, because, unlike Dr. Lin, these physicians relied upon appropriate laboratory and/or clinical findings in determining plaintiff's impairments and resulting limitations, and their opinions are consistent with the medical evidence of record.

Plaintiff argues that the ALJ failed to properly consider Dr. Lin's opinions, because his findings should have been accorded higher probative value as those of a treating source[4] and were supported by the findings of Dr. Kramer, an independent medical evaluator.[5]  Plaintiff contends that such a failure requires reversal and remand for payment of benefits.  (Joint Stip.

---

[4]    Although plaintiff appears to argue that multiple treating doctors' opinions were improperly rejected (*see, e.g.*, Joint Stip. at 4), she discusses only the alleged failure to properly consider the opinions of Dr. Lin, not other treating sources (Joint Stip. at 10-11).  Therefore, the Court will limit its analysis to the ALJ's consideration of Dr. Lin's opinions.

[5]    Dr. Kramer's opinions were not considered by the ALJ.  However, the records were submitted to the Appeals Council, and this Court must review both rulings and Dr. Kramer's reports to determine whether substantial evidence supports the Commissioner's decision.  Taylor v. Comm'r of Soc. Sec., 659 F.3d 1228, 1235 (9th Cir. 2011).

at 11.)

As noted above, in determining that plaintiff was not disabled, the ALJ gave little probative weight to Dr. Lin's findings for several reasons. The Court examines the ALJ's reasons below to determine whether they are specific and legitimate and supported by substantial evidence.

First, the ALJ gave less probative value to Dr. Lin's opinion because of the relative infrequency of plaintiff's visits to him. (A.R. 30.) The record shows that between July 2008, and February 2010, *i.e.,* for the duration of their treatment relationship,[6] plaintiff visited Dr. Lin five times: once in 2009, three times in 2008, and once again in 2010.[7] (A.R. 304-09.) Both case law and regulations explicitly allow the ALJ to consider the frequency of office visits and the general nature of the treatment relationship when deciding how much value to give the opinion of a treating source. 20 C.F.R. § 416.927(c)(2)(I) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1164 (9th Cir. 2008)(physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships). Therefore, the ALJ was entitled to give Dr. Lin's opinions less weight, given the fact that plaintiff saw him for only five times over the course of almost two years. This, therefore, is a specific and legitimate reason.

Second, the ALJ found that Dr. Lin's opinions warranted less weight, because Dr. Lin's reports contained no laboratory or clinical findings that one would reasonably expect to see if the plaintiff were as limited as Dr. Lin assessed her to be. The Ninth Circuit has held that treating

---

[6]   Plaintiff seems to report having visited Dr. Lin twice more in February and March 2010, but the record contains no office visits notes that reflect these dates. (A.R. 311.)

[7]   The record also contains a log of prescriptions with dates on which Dr. Lin gave them to plaintiff. It is unclear, however, whether Dr. Lin actually saw plaintiff on these dates or, rather, whether prescriptions were issued without any office visit. (A.R. 302-03.)

1  physicians' opinions are not accorded more weight if they are conclusory or not supported by
2  medical evidence. Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004)(ALJ may
3  discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record
4  as a whole, or by objective medical findings); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.
5  1992).  Many of Dr. Lin's notes, to the extent they are legible, seem cursory and do not contain
6  clinical findings or tests besides standard measures, such as blood pressure.  (A.R. 304-05, 307-
7  09.)  Indeed, his January 6, 2009 and January 20, 2010 letters range from two to six sentences
8  and do not contain any supportive clinical findings.  (A.R. 301, 306.)  Further, and perhaps most
9  strikingly, it does not appear that Dr. Lin ordered or performed *any* diagnostic testing.[8]  (A.R. 27.)
10  Thus, this constitutes a specific and legitimate reason for affording little weight to Dr. Lin's
11  opinion.

12

13  Third, and critically, the ALJ specifically gave little weight to Dr. Lin's January 20, 2010
14  letter, to the extent it relied on his assessment of plaintiff's back pain, because if was
15  "unsupported by any medical signs, findings, or explanation," and "it [wa]at odds with the
16  essentially normal clinical findings and other medical evidence of record."  (A.R. 30.)  An ALJ may
17  reject the opinion of a treating physician when it is inconsistent with the evidence of record.  *See*
18  Magallanes, 881 F.2d at 751-54 (upholding ALJ's rejection of treating doctor's opinion that was
19  contradicted by evidence in the record).  As discussed *supra*, it does not appear that Dr. Lin
20  ordered or performed any diagnostic testing in assessing plaintiff's impairments and limitations.
21  Additionally, the other medical evidence of record, which was discussed throughout the ALJ's
22  decision, is inconsistent with the extreme restrictions found by Dr. Lin.  For example, as noted by
23  the ALJ, in September 2009, consultative examiner Dr. Paule noted that, although plaintiff "walked
24  with a limp and had limited movement of the ankle," "she did not require or use an assistive
25  device for ambulation, and she exhibited normal motor strength, sensation, and reflexes

26

27  [8]    Rather, it appears that "an x-ray of [plaintiff]'s ankle was performed at the request of the
28  State Agency in August 2009, and it showed post-traumatic osteoarthritis changes of the ankle
joint, albeit only [to] a 'minimal' degree."  (A.R. 27; citation omitted.)

throughout the lower extremities." (A.R. 28.)  Further, Dr. Paule noted that "[plaintiff] presented with an essentially unimpaired spine, no paravertebral muscle spasm or tenderness, and negative straight leg raising test at 90 degrees in both the seated and supine positions." (*Id.*)  As relevant here, Dr. Paule opined that plaintiff was capable of "standing or walking for up to 4 hours in an 8-hour workday" and "sitting for 6 hours in an 8-hour workday." (A.R. 30.)  Similarly, after reviewing the medical record, including Dr. Paule's report, State Agency medical consultant Dr. Lightfoot opined, *inter alia*, that plaintiff could stand and/or walk for 4 hours and sit for 6 hours in an 8-hour workday. (*Id.*)  Clearly the above-noted opinions and findings are "at odds" with Dr. Lin's opinion more restrictive assessments of plaintiff's limitations. (A.R. 301.)  As such, the ALJ provided a specific and legitimate reason for affording Dr. Lin's opinions less weight.[9]

Moreover, the opinions upon which the ALJ relied in finding plaintiff to be not disabled -- *to wit*, the opinions of Dr. Ho, Dr. Paule, and Dr. Lightfoot -- are supported by substantial evidence and are consistent with the medical record of evidence.  With respect to plaintiff's mental impairments, the ALJ noted that Dr. Ho's findings "represent the *only* detailed mental status evaluation of record." (A.R. 28; emphasis added.)  Further, Dr. Ho's opinion is entitled to great weight because his medical specialty is in the field of psychiatry, which is the most relevant specialty pertaining to plaintiff's mental impairments.  *See* Holohan, 246 F.3d at 1202 ("[T]he regulations give more weight to . . . the opinions of specialists concerning matters relating to their

---

[9]    The Commissioner now contends that the ALJ rejected Dr. Lin's opinion, in part, because of an alleged inconsistency between two of Dr. Lin's letters.  In her decision, the ALJ noted that:

> In a letter dated January 6, 2009, Dr. Lin indicated [plaintiff] is 'not able to walk a long distance or stand for long hours [sic]' due to her history of left ankle dislocation and pinning . . . .  In a more recent letter dated January 20, 2010, Dr. Lin indicated [plaintiff] 'has not been able to walk distance even sitting more than 15 minutes [sic]' because of back pain . . . .

(A.R. 30; internal citations omitted.)  While the ALJ summarized the two letters, she never identified any inconsistency.  Thus, the Court cannot entertain this post hoc rationalization proffered by the Commissioner.  *See, e.g.*, Orn, 495 F.3d at 630 ("We review only the reasons proffered by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely").  Moreover, the second letter is written so poorly that the limitations as to which it opines are entirely unclear.  As such, it would be impossible to determine if there were any inconsistencies between the two letters.

specialty over that of nonspecialists."); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996)(holding that the ALJ should have given greater weight to a physician with the expertise that was most relevant to the patient's allegedly disabling condition).   Similarly, with respect to plaintiff's physical impairments, the ALJ noted that Dr. Paule's findings, upon which Dr. Lightfoot relied, "represent the *only* detailed physical examination of record."  (A.R. 28; emphasis added); *see* <u>Andrews</u>, 53 F.3d at 1041 (noting that the opinion of a nontreating source may constitute substantial evidence of it is based on independent clinical findings).  Moreover, unlike the opinion of Dr. Lin, the opinions of Dr. Ho, Dr. Paule, and Dr. Lightfoot are consistent with the medical evidence of record.  As such, the ALJ's decision to afford their opinions great weight, in finding that plaintiff is not disabled, is supported by substantial evidence.[10]

Plaintiff also claims, *inter alia*, that the ALJ erred in rejecting the opinion of Dr. Lin, because Dr. Kramer's comprehensive independent medical evaluation dated January 17, 2011, which was introduced into evidence before the Appeals Council after the ALJ's decision, confirmed, to some extent, Dr. Lin's opinions.   In his evaluation, Dr. Kramer found tenderness to palpation with associated muscle spasm involving plaintiff's lower thoracic and lumbar spine areas and that plaintiff had a restricted range of motion at the waist in the extremes.  (A.R. 230-35.)  Dr. Kramer diagnosed plaintiff with chronic low back pain with right lower extremity radiculopathy at L5-S1, chronic left ankle pain, post-traumatic stress disorder, difficulty concentrating, and hypertension. (A.R. 233.)  Dr. Kramer opined that plaintiff can sit for up to 4 hours and stand/walk for up to 0-1 hours in an 8-hour workday, but she must "get up and move around every 15-20 minutes," and she must lay down and stretch 3-5 times a day for 10-15 minutes.  (A.R. 238-39.)

This additional evidence does not undermine either the ALJ's decision to afford Dr. Lin's

---

[10]    Plaintiff claims that the ALJ committed error by not fully incorporating Dr. Ho's assessment, which allegedly limited plaintiff to "simple three-step commands." (Joint Stip. at 19.)  In assessing plaintiff's mental orientation, Dr. Ho noted that plaintiff could follow a simple, three-step command.  (A.R. 267.)  However, contrary to plaintiff's contention, Dr. Ho never specifically limited plaintiff to performing *only* simple, three-step commands.   Accordingly, plaintiff's contention is unavailing.

opinion little weight or the ALJ's ultimate non-disability determination.  As an initial matter, plaintiff admits that "Dr. Kramer's findings . . . are identical to Dr. Lin's findings."  (Joint Stip. at 10.)  It follows, therefore, that there is little, if any, new information that the ALJ did not already consider in rendering his non-disability determination.  Further, Dr. Kramer's opinion suffers from many of the same infirmities as Dr. Lin's.  First, Dr. Kramer's opinion is at odds with the opinions of Dr. Paule and the State Agency reviewing physician.  Second, beyond Dr. Kramer's findings of tenderness, muscle spasms, and restrictive range of motion, there are no other objective medical findings to support his rather extreme functional restrictions.  Indeed, it does not appear that Dr. Kramer reviewed the opinions or findings of Dr. Paule or Dr. Lightfoot in assessing plaintiff's physical restrictions.  (A.R. 232-33 - Dr. Kramer reviewed a letter from Patrick A. Mauer, M.D., which noted his prescription of Vicodin and Valium for plaintiff, and treatment records and letters from Dr. Lin.)  Moreover, and critically, even if the Court were to assume that this additional evidence undermines the ALJ's last reason for affording little weight to Dr. Lin's opinion -- *to wit*, that Dr. Lin's opinion was "at odds with the essentially normal clinical findings and other medical evidence of record" -- the ALJ provided other specific and legitimate reasons for rejecting Dr. Lin's opinion.  Thus, at best, any error committed by the ALJ with respect to his assessment of the opinions of Dr. Lin was harmless.

For these reasons, the Court finds that the ALJ properly considered Dr. Lin's opinions, and the additional evidence does not render the ALJ's decision unsupported by substantial evidence.

## II.    **The ALJ Properly Evaluated Plaintiff's Credibility.**

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. § 416.929(a)(explaining how pain and other symptoms are evaluated).  "[U]nless an ALJ makes

13

a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." <u>Robbins</u>, 466 F.3d at 883.  The factors to consider in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *See* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958–59 (9th Cir. 2002); *see also* 20 C.F.R. § 416.929(c).

Here, the ALJ found that, "[a]fter careful consideration of the evidence, . . . [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 27.)  The ALJ cited no evidence of malingering by plaintiff. Nonetheless, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible" to the extent they varied from the ALJ's own RFC assessment. (*Id.*)  Accordingly, the ALJ's reasons for finding that plaintiff was not credible with respect to her subjective symptom and pain testimony must be "clear and convincing."

Plaintiff testified at the July 28, 2010 hearing that pain in her leg and lower back prevented her from working; the pain was constant, preventing her from sitting, standing, or walking for long periods of time.  (A.R. 58, 65, 71.)  She indicated that she takes the bus, reads, microwaves foods, and occasionally socializes with friends.  (A.R. 67-69.)

On an adult function report dated June 5, 2008, plaintiff reported trying to walk or ride a bike to help with her weight loss and lower her blood pressure. (A.R. 147.)  She indicated that she was afraid of slipping in the shower because of her pain and was worried about pain in her lower back while dressing herself.  (A.R. 148.)  She explained that she made salads, sandwiches, and whatever else she could afford for meals.  (A.R. 149.)  In terms of housework, she reported doing small amounts of laundry, albeit slowly, and that she rarely shops but does take walks, ride

bikes, and take public transportation "a lot." (A.R. 149-50.)  In terms of social activities, plaintiff indicated that she enjoys reading and sitting on the beach, although it hurts to sit for too long, and that she spends time with others about three to four times a week.  (A.R. 151.)  She also reported going to church on a regular basis.  (*Id.*)  In the same report, plaintiff indicated that she could walk only about ten minutes before needing to rest and could pay attention only for a few minutes, depending on her pain.  (A.R. 152.)  She also reported that she followed written and spoken instructions well and got along with authority figures "okay," but that she did not handle stress or changes in routine well.  (A.R. 153.)  Finally, she remarked that she had to use a walker and cane when her pain was bad and threw off her balance.  (*Id.*)

The ALJ discounted plaintiff's testimony and credibility for essentially the following reasons: (1) clinical findings did not support a more restrictive RFC than that assessed by the ALJ, and objective medical evidence supported the ALJ's RFC determination; (2) plaintiff's treatment and use of medication; (3) plaintiff's work history; and (4) plaintiff's daily activities.

First, the ALJ found that objective medical evidence did not support plaintiff's allegations of pain.  (A.R. 30.)  Dr. Paule, for example, conducted his own independent examination and found no tenderness to palpation in the midline or paraspinal areas, and plaintiff tested negative for the straight leg raising; her range of motion appeared to be within normal limits.  (A.R. 286.)  Dr. Ho's complete psychiatric report found that plaintiff presented as clean, neat, and alert, with good eye contact, and that she was able to do simple calculations and spell "world" backwards correctly.  (A.R. 265, 267.)  These findings seem to contradict plaintiff's assertions of extreme pain and difficulty functioning and concentrating, and the ALJ is permitted to rely on a non-treating physician's opinions, which are supported by independent clinical findings, to discredit plaintiff's testimony. *See* Batson, 359 F.3d at 1196; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)(medical evidence a factor in determining severity of claimant's pain and its effects). Therefore, although the ALJ cannot require objective medical evidence to support the degree of plaintiff's pain, the lack of objective medical evidence, when combined with other reasons,

constitutes a clear and convincing reason to discount plaintiff's credibility.

Next, the ALJ discounted plaintiff's credibility because of her limited treatment history. (A.R. 29.)  The ALJ found significant that plaintiff's records from the Venice Family Clinic do not show complaints of musculoskeletal pain in 2008 or 2009, during her visits to Dr. Lin; the ALJ also remarked that plaintiff sought no medical treatment between May 2009, and November 2009, and instead cancelled multiple appointments with Dr. Lin. (*Id.*; *citing* A.R. 255-63, 248-54, 305.) Finally, the ALJ noted that plaintiff received essentially routine treatment for her pain and anxiety. (*Id.*)  The Ninth Circuit has held that conservative, or infrequent, treatment can be used by an ALJ to refute allegations of disabling pain. *See* Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)(ALJ noting doctor prescribed only conservative treatment, suggesting lower level of pain and functional limitation).  It is reasonable to expect a claimant experiencing significant pain to complain about such pain during office visits and to not cancel doctor's appointments.  This reason, therefore, is clear and convincing.

Third, the ALJ discounted plaintiff's credibility, because the ALJ found that plaintiff's work history suggested she might not be reliable. (A.R. 29.)  Specifically, the ALJ found that the record showed plaintiff worked only sporadically prior to her alleged disability date and worked for five months as a bartender after the onset date, yet failed to report this work despite multiple requests from the agency. (*Id.*)  This suggested that "much of what [plaintiff] has alleged may be similarly unreliable." (*Id.*)  Plaintiff did not work from 1998-2002. (A.R. 144.)  She did not indicate that she was working as a bartender in multiple reports to the agency, but she revealed such information to Dr. Ho. (A.R. 265, 163-72, 173-80, 185-96.)  It would appear that plaintiff's ability to work after the alleged onset date would give rise to a reasonable inference that plaintiff's subjective pain is not as restrictive as she alleges it to be.  The ALJ is expressly allowed to consider a claimant's work history when evaluating her credibility. *See* Thomas, 278 F.3d at 958-59 (including work history as a fourth factor).  Furthermore, an ALJ is entitled to use ordinary techniques of credibility evaluation, including the claimant's reputation for lying, prior inconsistent

16

statements concerning her symptoms, and other testimony by the claimant that appears less than candid.  Smolen, 80 F.3d at 1284.  Therefore, it follows that this reason is clear and convincing.

Finally, the ALJ reasoned that plaintiff's daily activities appear to be inconsistent given her pain allegations.  (A.R. 29.)  Although the law establishes that disability does not mean a claimant must vegetate in a dark room, excluded from all forms of human and social activity, see Cooper v. Brown, 815 F.3d 557, 561 (9th Cir. 1987), the ALJ is allowed to consider daily activities in weighing a claimant's believability, Tommasetti, 533 F.3d at 1041.  The record contains plaintiff's allegations of pain (see, e.g., A.R. 65) as well as testimony regarding her daily activities that seems to be inconsistent with debilitating pain, such as riding a bike, socializing three to four times a week with friends, and cooking (A.R. 147, 149, 151).  Plaintiff also reported participating in community activities, like going to church on a weekly basis.  (A.R. 151.)  To the extent that the evidence conflicts, again "[i]t is then solely the province of the ALJ to resolve the conflict."  Andrews, 53 F.3d at 1041.  Here, the ALJ's reasoning is convincing and is entitled to deference.  For example, the girlfriend of plaintiff's brother reported on June 10, 2009, that plaintiff spent her days walking, bicycle riding and going places to "take care of business," and she had no problems with personal care.  (A.R. 197-98.)  This again suggests that plaintiff's complaints of debilitating pain were, to some extent, exaggerated.  See Valentine v. Comm'r of Soc. Sec., 574 F.3d 685, 694 (9th Cir. 2009)(discounting claimant's credibility based, in part, on daily activities including gardening and community activities).

In conclusion, the ALJ's reasons for discrediting plaintiff's testimony are clear and convincing.

///
///
///
///
///

17

**CONCLUSION**

For all of the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error.  Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration. IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: November 8, 2013

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

18